Our next case is number 23-13029, Ramona Bivins v. Gail Hambrick. Michael Freed Good morning, Your Honors. May it please the Court, I'm Michael Freed here on behalf of the Appellant Commissioner Gail Hambrick. To sufficiently state a claim and overcome qualified immunity, the plaintiff, Ms. Bivins, was required to plead facts that, if true, were sufficient to show that Commissioner Hambrick, through her own actions, violated Ms. Bivins' First Amendment right to intimate association. She failed to do so. And that failure can be seen if we zoom out and look at this case from a 50,000-foot level. Ms. Bivins' theory of the case is that she was a victim of Clayton County politics. She claims that she was fired in retribution for her husband's political activity. He supported one candidate for an upcoming election, and the three members of the board that voted to terminate her contract supported another. But that political fight was the motivation, according to her, that's the motivation that led to the board terminating her contract. The problem is, is that she never alleges specific facts as to Commissioner Hambrick that she had that motivation. And we can look, we can see that by comparing the allegations against Commissioner Franklin and Anderson on one hand, and Commissioner Hambrick on the other. Well, let me ask you about one aspect of the complaint that I think, for me, is troubling. Troubling for your client. Which is, this is not just a mere termination of a contract. There is also, I've never seen this before in all my 25 years on the bench. A declaration that an employee who served in Goodstead for 21, for 10 years, was ultravirous. Doesn't that add a certain sort of filter to the allegations in this case? This is not just like, we're going to terminate your contract, your employment is over, thank you very much, good luck elsewhere. I mean, I presume, and the allegations in the complaint indicate, that this ultraviarious declaration had some negative effect on Ms. Bivens, right? I think that's correct, yes. Why? Give me a legitimate reason. We're on a motion to dismiss, so give me a legitimate reason why the commissioners would declare her employment ultraviarious. So again, this is not in the complaint, your honor, but you might... Then if it's not in the complaint, we're done with that issue. Well, I think the important... You have to accept that the termination was illegitimate, do you not? We have to accept that the termination was illegitimate? Yes, at this stage of the case. Putting aside Commissioner Hambrick's liability or entitlement to qualified immunity, don't you have to accept that her termination and declaration of employment as ultraviarious was illegitimate at this stage of the case? That is what's pled in the complaint, yes. And you have to accept that, and we have to accept that, right? Fair enough. Okay. But I think the question here is what is the motivation, and did she sufficiently plead that motivation as to Commissioner Hambrick? And again... Well, the only possible motivation alleged in the complaint is retaliation based upon her association with her husband and his political activities. Because you're on a 12B6 motion, you have no other explanation for that. Now, that may not get them past qualified immunity, but in terms of stating a claim, because you've made both arguments on both parts of the qualified immunity prompt, you've alleged that there's no cause of action pled, and that there's no clearly established law that was allegedly violated. And I'm questioning you about the first. Yes. So... And I think you've got more trouble on the first. So... Because there's no legitimate explanation in the four corners of the complaint for what they did to Ms. Bivens. I think I would challenge the notion that there needs to be a legitimate explanation within the four corners of the complaint that would give Ms. Hambrick another reason. The question is, is there sufficient allegations within the four corners of the complaint that show that Ms. Hambrick had an unconstitutional motivation based on the allegations directly against her? And here's what those allegations are. Number one, she knew that Mr. and Mrs. Bivens were married. Number two, she knew that Mr. Bivens supported Commissioner Davis' re-election campaign. And number three, she failed to give an explanation for her vote. I don't think that there's much question that those three allegations standing alone are insufficient to prove that Commissioner Hambrick had an unconstitutional motivation. And in fact, the district court essentially acknowledges that those allegations, the ones that are directly against Ms. Hambrick, are not enough. So what the court did was it looked to the allegations against the other commissioners. And we can see this transition by looking right at the face of the order on page 14 when the court starts to do its analysis as to the allegations against Ms. Hambrick. It starts by saying, well, Ms. Hambrick knew that Mr. Bivens supported Commissioner Davis. Then in the next sentence, the court shifts and starts looking at the allegations against the other two commissioners. The court says, well, we know that Franklin and Anderson supported another candidate. And then we have all these statements that Franklin and Anderson made between them before and after the meeting. That analysis, the court's incorporation of the allegations against the other two commissioners was improper for two reasons. Number one, this court said in Keating, pulling a quote directly from Iqbal, that a Section 1983 plaintiff must allege facts against each of the public official defendants that showed that they each violated the Constitution based upon their own conduct. And so that's, we can take from that that what we have to look at are the allegations against Ms. Hambrick. But the allegations can also deal with joint conduct. And I know you think it's wrong, but the district court thought that Anderson's comment to another Clayton County employee that quote unquote, we're only going after Ramona was sufficient. So tell me why you think the district court erred in that respect. So two reasons. So first of all, I think that that statement is a little bit of a red herring and I'll tell you why. We are going after Ramona and you know, for the purposes of a 12B6 in our conversation today, I think we have to interpret we broadly, right? So even if we interpret we to include Commissioner Hambrick, all that statement says is we have a plan to terminate her. We don't, and we know that to be true without that statement because they did. So I think all that statement says is we intend to do what we did. It says nothing about what the motivation for that decision was. But the ultraviolet declaration adds a little bit of color to what they intended to do, which was not merely to terminate an employee's contract. What did the ultraviolet declaration do to Ms. Bivens? What did it do to her practically speaking? Yes. Why? I think it's stripped her of her severance. Yeah. Yeah. But again, what's the motivation and specifically what not what is the actual motivation? There's no other motivation that can be gleaned from the complaint except that they were going after her because of her husband's political associations. So I'd like to direct the court to. Before you do that, let me just ask as a follow up. It sounds as though you're arguing that indeed as we look at the allegations, in particular those with regard to Commissioner Hambrick, that there was, there are no allegations in the complaint that state a causal connection with regard to what she did and the fact that the retaliation was because of her marriage to Mr. Bivens. That's what I understand you to be arguing. Is that correct? Yeah. I think that's another way of putting it. Yes. Yes. And getting back to your question, Judge Jordan, I'd like to point the court to its decision in Matthews. And Matthews talks about the notion that legislators can have a whole host of variety of reasons for taking, for making a particular decision. And you can have an instance like this where you have two members of a board that have an unconstitutional motivation and you can have one that has a perfectly valid explanation for what they're doing. You can't just assume based upon how they voted that this commissioner shares the unconstitutional motive of the other two. And what Matthews further instructs is that you can't impute that unconstitutional motivation that one or more commissioners may have onto another. And that takes us back to the Keating rule and the Iqbal rule. She has to plead that Commissioner Hamburg, through her own conduct, had an unconstitutional motivation and she fails to do so. I think a helpful analogy here is kind of talking about — But she did plead it. You just think she hasn't pled it sufficiently. She has not pled specific facts. There are some conclusory allegations in there that she had an unconstitutional motivation. But conclusory allegations are not enough. She has to plead specific facts to support that allegation. Only to the extent necessary to make the allegation plausible. Yes. And that's a good point. Iqbal talks about there's this line between possibility and plausibility, right? And what Iqbal says is you have to allege facts — simply alleging facts that might be consistent with liability is not enough to push a complaint over the line from possibility to plausibility. And we see the allegations against Ms. Hamburg here about her — So what's the difference between plausibility and probability? Well, I think that's a difficult question to answer in the abstract. Because they both mean the same thing. Well, Iqbal seems to say that they're different. I know. And if you look at a dictionary, it tells you that Iqbal is just completely wrong. And Iqbal and Twombly also tell you that probability is not the standard. So like, where's the comfort zone? Yeah, so again, I agree that in the abstract, that's a really difficult question to answer. But I think, you know, what Iqbal says is, you know, all of this is context-specific. And so when we look at the distinction between those two in the context of this case, I think at a minimum, you have to allege that Commissioner Hamburg supported a different candidate. That she had — you have to allege facts showing that she had that political motivation that Franklin and Anderson have in order to get across the line to plausibility. And so without that, you can't get there, even on a 12b-6. And so, you know, I think it's helpful to kind of talk about, you know, an analogy of connecting the dots. And when you look at the allegations against Franklin and Anderson, you have that allegation that they supported Ms. Scott's campaign. And so then you have all these other allegations about the statements that they made and about the campaign sign incident. You can connect them all together, and this is what the court held. You can connect them all together, but what ties them together is that dot, that allegation that they supported a different candidate. You go over here and you look at the allegations against Ms. Hamburg. You don't have that allegation to tie the rest of it together. So the only way you can do so is through speculation, which Iqbal says that you can't do, or through this notion that you can impute the motivation of Anderson and Franklin on to Hamburg, which Matthew says you cannot do. If there's no further questions at this time, I'd like to reserve the rest of my time. You've got it. Thank you. Thank you. Ms. Kuczynski? Good morning, Your Honors. Morning. Kate Kuczynski here for the plaintiff below, Ramona Bivens. Commissioner Gail Hamburg argues that she is entitled to qualified immunity by challenging the sufficiency of the facts pled in the complaint and claiming that the First Amendment right at issue was not clearly established. Both arguments fail. First, because Bivens' complaint alleges that Hamburg voted to terminate her, declare her contract illegal, and seek reimbursement of tuition funds because of who she was married to. And second, because the law of the circuit has clearly established that a public employer cannot take adverse employment action against a public employee because of who the employee is married to or romantically involved with without legally sufficient justification. Can I ask you a question about the second point you just made there? Yes. Do you agree that the sort of what we call the Pickering balancing analysis is part and parcel of an Intimate Association claim under our precedent? Well, I think that's a question that we'll need to address with the district court as this case proceeds further. But I do, I think to argue otherwise would be to essentially argue that the right to hold a public job is, and be married to whomever you want, is absolute. And I don't think that the cases that this court has decided have ruled that way. It's possible to infringe that right if there is no legally sufficient justification for making the decision to terminate somebody because of who they're married to or romantically involved with. So I suppose actually, yes, I suppose I would agree that the Pickering analysis is sort of an important component of determining whether the right was infringed, but it is not a determining factor of whether there is a right, if that makes sense. Okay, that's fine. That's fine. But I mean, I presume here your allegation is that the right was infringed. His contention is, I didn't infringe it, and if I did, there was no law that put me on notice that I was infringing it. Right. And so we've got to figure out, like, whether there was an infringement and whether the infringement was clear. And so it seems to me, under cases that you cite, you know, McCabe and Shahar, that our precedent is pretty clear that the Pickering analysis is baked in to an intimate association claim involving a public employee. I think I would have to agree with that, yes. And so, sorry, so if that's true, which I think you're right it is, you know, one thing we've said, I don't think this necessarily hangs you, but one thing we've said is, boy, the Pickering analysis is so fact-intensive and so context-dependent, it's really hard to clearly establish law under that test, right? So there's this, like, sort of a headwind that you're sailing into. And why wouldn't, you know, sort of in this kind of case, why wouldn't the other side have a decent argument that, well, you know, part of the Pickering analysis is whether we're trying to, you know, sort of avoid management disruptions and, you know, sort of ensure the efficiency of the operation, therefore we win. Or at the very least, we don't clearly lose. Well, I think the right that we're talking about here is the right to be married to whomever she chooses to be married to and to not be fired because of that intimate association. The question of infringement is one that we'll have to get to as discovery goes on. I think that this is tied to the question of the sufficiency of the allegations in the complaint. And we have sufficiently alleged that there was no justification for the decision to not just not renew her contract, but fire her on the spot three weeks before her job would have expired anyway if Hamburg had just voted not to renew, and to declare her contract ultra vires, to declare it illegal despite the fact that there's a near identical comparator who they did not do that to. And then after making the decision to fire her, to pursue her for tuition that was paid on her behalf under her contract. So the way that the complaint has pled the allegations is that there is no other explanation. And if that's true, then we would, at least at this stage, we would meet the Pickering test and we can move forward to discovery to test out whether they do have a legally sufficient justification for the decision to fire her. But I don't think we automatically lose at this stage just by conceding that Pickering does apply, because we have alleged that there was no justification. Okay, so this is interesting. I think that's the right answer, and this is now kind of a question for both of you, so like fair warning. No plaintiff or plaintiff's lawyer worth his or her salt facing a Pickering analysis would ever plead in the complaint. Oh, by the way, there might have been some other justification that would satisfy Pickering. Does that mean, in effect, that we can't do Pickering on a motion to dismiss ever? Because I mean, now you do have, there's this case in the briefs, the name of which I've now forgotten, Kress or something like that, Kress or Chesser, where the plaintiff did the unthinkable and like actually said, well, now it could have been a subordination, but it really wasn't. Bad lawyering. But like, you know, you were very shrewd. You would never plead in your complaint, facts that would undermine your Pickering case. So I guess that just sort of leads me to wonder whether we can ever really do Pickering on a motion to dismiss. I mean, we do. The crazy thing is, like, we do it. And the question is like, how? I don't know. I think it really does depend on whether you have a good enough attorney who doesn't plead himself out of court, basically. And the fact that we didn't plead ourselves out of court, I don't think means that we need to be effectively punished by having to apply Pickering now and test the explanation that we've provided in the complaint for why Ms. Bivens was terminated, which was because she is married to somebody with whom Hamburg had a problem. That problem having arisen from his political activity. So there may be cases where you do apply Pickering at the motion-to-dismiss stage. Mine isn't one of them. Ha! I'm sorry. One more. And then I'll shut up. But it sounds like only in sort of your construction of these cases, only in a case like Chesser where the plaintiff pleads himself out of court, in every other case, every not only Antiman Association claim involving a public employee, but every public employee case is going to survive motion-to-dismiss on qualified immunity. I don't necessarily think that's true because I think it really depends on the type of relationship that you're talking about. For example, the Gaines v. Wardinsky case that this court decided a few years ago found that there was qualified immunity or rather that I believe the defendant won on qualified immunity after a motion for summary judgment because that relationship, parent-child, it's not clearly established that a child could state a claim for being terminated for the actions of their parent. This is different. We're talking about marriage, which case after case has found is a particular and significant and constitutionally protected relationship and that cases in this circuit have repeatedly recognized there is a right to be married to whomever you want to as a public employee that can, may, may or may not be infringed if you are terminated because of who you're married to. And there may be a good reason for terminating an employee because of who they're married to, but the right itself does not depend on the reason for the termination. The right is I can be married to whomever I want to even though I am the CFO of Clayton County and if my superiors, including Commissioner Hambrick, terminate me because of that relationship, they better have a good legally justifiable reason for having done so, otherwise they have infringed the pre-existing right. So the clearly established law here is the right to be married to who you want to be married to and to not be fired for that relationship without legally sufficient justification. And that's just a question of whether you have pled a legally sufficient justification, which I would argue we have done so here. Do you plead in your complaint though that Hambrick was motivated to vote to terminate her employment because of her marriage to her husband based on his political conduct and speech? In your brief, you a couple of times indicate that Bivens alleges that Hambrick was motivated to vote that way. I did not see that in your complaint. I think that the question here has to do with whether we have pled direct evidence of her motivation or circumstantial evidence of her motivation. We've pled circumstantial evidence of her motivation. We're not required to plead direct evidence of her motivation, which I believe is what my learned colleague is suggesting in his argument. No, we have not pled. Hambrick was a Janice Scott supporter, but I don't believe we have to. And there are four different kinds of categories of facts that we've pled that are sort of your classic circumstantial evidential case. So first, there's the lack of any employment-based justification for taking these adverse actions against Ms. Bivens. Second, the temporal proximity, the classic retaliation-causation argument between when her husband took this protected activity and caused the commission to have a problem with her marriage and the time that they terminated her, which was 15 days. The punitive nature of the actions taken against Ms. Bivens in the first place, and the fact that Hambrick took no adverse action against an identically situated comparator. So the complaint pleads that Ms. Bivens was an exemplary employee. She consistently received positive reviews. She worked there for 10 years under Hambrick and some of these other commissioners for multiple of those years, at least three, and never had a problem. And in fact, before her husband engaged in political activity, they expressed support for her job and for her job performance. Only after he engaged in political activity did they suddenly have such a problem with her that they fired her. And this also speaks to the punitive nature of the actions they took. If, you know, the basic justification for not renewing her contract is, I don't want you to do this job anymore, perhaps because I don't think you're doing a good enough job or I think there's somebody else who could do it better. In this case, if they had just voted to not renew her contract, I don't know if we'd be here because that is kind of a basic decision that they could have made that does not require justification. Going above and beyond that, taking the extraordinary step of firing her three weeks before her contract would have expired anyway, and then declaring that contract illegal so as to deprive her of severance, speaks to a malign intent. Why do that if you could just let her contract expire and say, see ya? They didn't do that. They punished her. And they didn't offer any justification for it. And this is where cases like Matthews and the others that Hamburg cites are distinguishable. Because in all four of the cases that they rely on for this imputation argument, the actions that were taken were not facially punitive. In Matthews, the issue was a reduction in force, essentially. The commission voted to end several jobs, including the plaintiffs, and that's not facially punitive. Campbell v. Rainbow City, Alabama, a city planning commission denied the plaintiff a job, is likewise not facially punitive. Mason v. City of El Portal, the plaintiff's term as police chief expired, and the city council voted not to reappoint him. Voting not to reappoint an official whose term has expired is likewise not facially punitive. And that case is particularly instructive here, where that's what this county commission could have done if they just didn't want her to do the job anymore. If Hamburg did not have malign intent, she did not have to vote to fire and declare Ms. Bivens' contract ultra-virus. I'd like to direct you to the additional prong, which is the clearly established law. In your brief, you rely upon Roberts and Rotary Club. Aren't they too general to serve as clearly established law with regard to the facts that this court is confronting here? Roberts itself is too general, but there's also discussion of a number of other cases, including the ones that the district court considered, which included McCabe, Shahar, and Lawson. And there are two other cases that are discussed in the Gaines case, where Gaines distinguishes the parent-child relationship from a marital or romantic relationship, and lists five different cases where there is a right that is either presumed or found to exist that could be infringed to hold a public position and to not be terminated because of who you are intimately involved with romantically. And the main reason why Gaines, to my reading at least, why Gaines was decided against the plaintiff is because it was a different type of relationship at issue. And so I think, I'm going to make the bold but no less true statement that I think we're in obvious clarity territory here, where there are five- Just so we don't get carried away. Sure. So you're going to say obvious clarity from a handful of cases, none of which went in the plaintiff's favor? Because- I know, I know, but I mean like, that means that everything they said good for you or for your side is dicta, right, technically? Technically speaking. But the fact that there are five different cases where a public employer had to provide a justification for why they terminated somebody because of who they were married to suggests that she should have been on fair notice, that she might need to have a reason, a good reason to terminate Ms. Bivens, or else she could have been found to have infringed her right. The point of clearly established is to give fair warning. And you can have fair warning by having a line of cases where the court says, well you had a good enough reason to do it, so you're okay for having done it because you had a good enough reason. So the fact that, and this is why I conceded that, you know, pickering may apply here, because the fact that we may get through discovery and find that actually Hamburg had very good reasons for terminating Ms. Bivens, but the fact is that no such reason is in the complaint, and we don't believe there is one anyway. So the right that is clearly established is the right to be married to who you choose to be married to and hold a public job and not be terminated because of that. And she could have known that that right existed if she had seen these five prior decided cases before she took this action. But because she decided to terminate Ms. Bivens and declare her contract illegal without having a sufficient justification, she did violate a clearly established law. And that's what we would submit is the reason why she's not entitled to qualified immunity. Who is the comparator? Oh, the COO, the chief operating officer of the county, Dietrich Stanford, who also had a contract with the county that the county, through the commissioners, did not declare ultra vires despite the fact that it was entered before the current iteration of the county commission had been set, which is ostensibly the reason given for why Ms. Bivens' contract was declared ultra vires. And he had also been allowed to attend courses at UGA that the county paid for. And when he said, when one of the commissioners, Anderson, asked him about the payments made for Bivens, he said, oh, do I need to give that money back too? And she said, no, you don't have to do that. We're only going after Ramona. And the we means she's purporting to speak for the other two members of the majority who voted to force my client, but not this direct comparator, to pay back the money. So for those reasons, Ms. Hamburg is not entitled to qualified immunity. Thank you. Your honor, I'd like to shift now and talk about this clearly established question that was mentioned earlier. So I heard a couple of times this notion that, you know, a public employee has the right to be married to who they want to be married to. That is too generalized of a statement of law to clearly establish a violation here under these facts. The Supreme Court has repeatedly said that to clearly establish a violation, you have to have prior precedent that is particularized to the facts of this case. And getting to your question, Judge Newsom, that's very difficult to do when pickering applies, because it is such a fact-intensive inquiry that it's very hard to overcome qualified immunity when that standard applies for that very reason. So let's look at what the district court did here. It looked at McCabe, it looked to Shehar, and it looked to Lawson as clearly establishing a violation here. Those three cases have something in common. So McCabe was an interdepartmental marriage. Shehar was a same-sex marriage. Lawson was an interracial marriage. In each of those cases, there was something innate in the marriage relationship itself that the employer disapproved of, and that's why they took the adverse employment action. That's not what we have here. And in none of those three cases was the adverse action taken because of the conduct of the plaintiff's employee's spouse, be it political conduct or otherwise. So none of those three cases are particularized to what we have here, because none of them deal with the set of facts where an adverse employment action was taken against a public employee allegedly in retribution for the conduct of that employee's spouse. So the district court set up this framework, and I think it started going down the right generalize, and you have to ask a more specific question that is particularized to the case. The problem is, is that the cases that the district court looked to don't actually answer the question that it asked because they don't deal with facts where the adverse action was taken supposedly or motivated by the conduct of the employee's husband or the employee's spouse, whichever the case may be. Does that factual alignment constitute a violation of the First Amendment? I'm sorry, I'm not sure I understand what you mean by that factual alignment, Your Honor. The facts alleged in the complaint, do they plausibly allege a First Amendment violation? Well, for the reasons I discussed earlier, those allegations as to Ms. Hamburg, we do not think they do. But even if they do, that by... I'm not asking about Ms. Hamburg. Okay. I'm sorry. I may have misunderstood your question. I apologize for not asking it in the right way. So my fault. Do the allegations in the complaint allege a First Amendment violation against Ms. Bivens? Yes. Okay. Okay, that was my only question. Okay, yeah. That was easy. If there's no further questions, thank you, Your Honors. Okay. Thank you both very much.